*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-AA-0544

LIBERTO GERARDO LECEA, PETITIONER,

v.

D.C. DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

DESIGN BUSINESS FURNITURE, INC., and NATIONWIDE INSURANCE COMPANY, INTERVENORS.

Petition for Review of an Order of the
District of Columbia Compensation Review Board
(2022-CRB-000023)

(Submitted May 25, 2023                    Decided September 14, 2023)

*Benjamin T. Boscolo* was on the brief for petitioner.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Thais-Lyn Trayer*, Deputy Solicitor General, filed a memorandum in lieu of brief for respondent.

*Jamie L. DeSisto* was on the brief for intervenors.

Before BECKWITH, MCLEESE, and SHANKER, *Associate Judges*.

MCLEESE, *Associate Judge*: Petitioner Liberto Gerardo Lecea challenges a

decision of the Compensation Review Board (CRB) awarding him workers'

compensation benefits in an amount smaller than Mr. Lecea sought. Mr. Lecea argues that the CRB (1) inaccurately determined Mr. Lecea's average weekly wage and (2) erroneously reduced the award to Mr. Lecea to reflect unemployment-compensation benefits Mr. Lecea had received in Virginia. We affirm.

## I. Background

The pertinent facts appear to be undisputed for present purposes. In January 2019, Mr. Lecea began working for intervenor Design Business Furniture (DBF), which sells and installs office furniture. Mr. Lecea worked intermittently on an "as needed" basis, and his duties included loading and unloading furniture from commercial moving trucks into office buildings. DBF paid Mr. Lecea $22 per hour. Mr. Lecea worked for DBF for approximately six weeks and was paid $2,150.

In February 2019, while working for DBF, Mr. Lecea fell from a ladder and was injured. At the time of the injury, Mr. Lecea also was working for another company, NOVA Express. Mr. Lecea later worked at yet another company, but he was laid off from that company and subsequently obtained unemployment-compensation benefits in Virginia.

## A. Calculation of Average Weekly Wage

Mr. Lecea filed a claim for workers' compensation benefits related to his injury. The parties disputed how to calculate Mr. Lecea's average weekly wage for purposes of determining the amount of Mr. Lecea's award. *See generally* D.C. Code § 32-1508 (basing amount of workers' compensation awards on claimants' average weekly wage). We note that the award in this case also rested in part on a determination about Mr. Lecea's average weekly wage relating to NOVA Express. That determination is not in dispute in this court, so our further discussion focuses solely on Mr. Lecea's average weekly wage relating to DBF.

DBF argued that Mr. Lecea's average weekly wage should be calculated under D.C. Code § 32-1511(a)(4), which applies if, at the time of the injury, the claimant's wages are "fixed by the day, [by the] hour, or by the output of the [claimant]." If the claimant had been working for the employer for the 26 weeks immediately preceding the injury, § 32-1511(a)(4) determines the average weekly wage by dividing the total wages earned in that 26-week period by 26. *Id.* If, as in Mr. Lecea's case, the claimant had been working for the employer for less than 26 weeks, § 32-1511(a)(4) provides that the total wages should be based on the amount the claimant would have earned if the claimant had worked for the employer for the

entire 26 weeks, "when work was available to other employees, in a similar occupation." *Id.*

Applying those provisions, DBF added the wages Mr. Lecea had earned during the six weeks he worked for DBF to the wages that a "like employee" (Mr. Anderson) had earned during the preceding 20 weeks, and divided that total by 26. That calculation resulted in an average weekly wage of $108.84. That number reflects the fact that neither Mr. Lecea nor Mr. Anderson worked full time for DBF.

Mr. Lecea argued that his average weekly wage should be determined under D.C. Code § 32-1511(a)(6), which applies "[i]f the injured employee has not worked in this employment during substantially the whole of the period." Although § 32-1511(a)(6) does not make this explicit, it appears to be common ground that "the period" refers to the 26 weeks preceding the injury. Apparently interpreting "this employment" to mean his job with DBF, Mr. Lecea argued that § 32-1511(a)(6) applied, because he had not worked for DBF for the preceding 26 weeks.

Where it applies, § 32-1511(a)(6) provides that the average weekly wage

> shall consist of 130 times the average daily wage or salary, divided by
> 26 weeks, which an employee of the same class working substantially

the whole of the immediately preceding period in the same or similar employment, in the same or a similar neighboring place, shall have earned in the employment during the days when so employed.

D.C. Code § 32-1511(a)(6). Also relying on Mr. Anderson as a comparable employee, Mr. Lecea argued that Mr. Anderson was paid on average $144 per day on the days when Mr. Anderson worked for DBF. Mr. Lecea thus calculated an average weekly wage relating to DBF of $720 ($144 x 130 ÷ 26).

After a hearing, an Administrative Law Judge (ALJ) of the District of Columbia Department of Employment Services concluded that § 32-1511(a)(4) applied and determined that Mr. Lecea's average weekly wage relating to DBF was $108.84. The CRB affirmed those conclusions. The CRB gave several reasons for applying § 32-1511(a)(4) rather than § 32-1511(a)(6). First, the CRB disagreed with Mr. Lecea's contention that § 32-1511(a)(4) was inapplicable because Mr. Lecea did not work a fixed number of hours each week. As the CRB explained, § 32-1511(a)(4) does not require that the number of hours worked be fixed; rather it requires that the hourly wage be fixed, as it was in this case at $22 per hour.

Second, the CRB explained that § 32-1511(a)(4) operates to fairly account for the wages of claimants whose work is sporadic. In reaching that conclusion, the CRB relied on this court's decision in *Hawk v. D.C. Dep't of Emp. Servs.*, 244 A.3d

1018 (D.C. 2021). In that case, this court upheld as reasonable the CRB's conclusion that the calculation of average weekly wage under § 32-1511(a)(4) should take into account the "seasonal or sporadic nature" of a claimant's work, by including in the calculation of average weekly wage periods of time when the claimant did not work because work was not practically available to the claimant and similar workers. *Id.* at 1020-22. We acknowledged "the well-settled principle that the workers' compensation system is intended to produce an honest approximation of claimants' probable future earning capacity and should not result in unjust enrichment for claimants." *Id.* at 1022 (brackets, citation, and internal quotation marks omitted).

Finally, the CRB discussed its earlier decision in *Marcoux*, CRB No. 16-033, 2016 WL 4166022 (D.C. Comp. Rev. Bd. July 25, 2016). That case involved a claimant who was injured on the third day that he had been working for an employer as a carpenter. *Id.* at *1. The claimant had worked for the employer intermittently on prior occasions, performing various other different jobs, including traffic flagger. *Id.* The CRB concluded that the ALJ had correctly relied on § 32-1511(a)(6) to calculate the claimant's average weekly wage. *Id.* at *8-9. The CRB explained that the claimant's relationship with the employer was "unique," in that each job was "a separate business relationship." *Id.* at *9. For that reason, the CRB concluded that

§ 32-1511(a)(6) applied. *Id.* Without further explanation, the CRB also said that "the ALJ's determination of [c]laimant's average weekly wage is supported by substantial evidence and is in accordance with the law." *Id.*

In the present case, the CRB concluded that *Marcoux* applies "narrowly" and rested on a determination that the "claimant's relationship with the employer was 'unique,'" because each different job the claimant had worked for the employer was "part of a separate business relationship." The CRB also noted that it had previously concluded that § 32-1511(a)(6) did not apply in cases where the claimant's employment "was sporadic" and the complainant "did not work . . . 40-hours per week." *Wolfe*, CRB No. 05-35, 2006 WL 158649, at *7 (D.C. Comp. Rev. Bd. Jan. 5, 2006). Relying on *Wolfe*, the CRB concluded that "§ 32-1511(a)(6) should not apply when it would lead to an average weekly wage that would exceed the claimant's actual average weekly wage. Such a result is contrary to the purpose of the [Workers' Compensation] Act." *Lecea*, CRB No. 21-098, 2022 WL 384886, at *5 (D.C. Comp. Rev. Bd. Jan. 27, 2022) (original brackets and quotation marks omitted); *see Wolfe*, 2006 WL 158649, at *7.

**B.  Reduction to Reflect Virginia Unemployment-Compensation Benefits**

The parties also disputed whether Mr. Lecea's award in the present case should be reduced to reflect unemployment-compensation benefits from Virginia that Mr. Lecea received during the claimed period of disability.  The ALJ ruled that Mr. Lecea's award in this case should not be reduced to reflect the Virginia unemployment-compensation benefits.  The CRB reversed that ruling.

The CRB explained that (1) Mr. Lecea was seeking a wage-replacement workers' compensation benefit; (2) unemployment-compensation benefits are also intended to replace lost wages; and (3) awarding duplicative wage-loss disability benefits and unemployment-compensation benefits for the same time period would result in "double recovery," contrary to the principle that claimants should not receive more money from not working than from working.

The CRB disagreed with two specific arguments raised by Mr. Lecea.  First, Mr. Lecea relied upon the CRB's decision in *Giron-Ventura*, CRB No. 20-091, 2021 WL 1016339 (Comp. Rev. Bd. Feb. 5, 2021).  In that case, the CRB declined to reduce a workers' compensation award based on payments the claimant had received under the CARES Act, 15 U.S.C. § 9001 et seq., a statute that provided pandemic-

related benefits to unemployed persons. *Giron-Ventura*, 2021 WL 1016339, at \*5. The CRB gave two reasons for that ruling: (1) the CARES Act benefit at issue was not funded by the claimant's employer, so reducing the workers' compensation award was not necessary to avoid requiring the employer to pay a double benefit, *id.* at \*5, \*7; and (2) the CARES Act benefit at issue was not intended as a wage replacement but rather was "a fixed amount, unrelated to a person's wages," *id.* at \*7.

In the present case, the CRB distinguished *Giron-Ventura*, explaining that the Virginia unemployment-compensation award was intended as a wage replacement, so awarding both those benefits and workers' compensation benefits for the same period would amount to double payment of benefits to Mr. Lecea.

Second, the CRB acknowledged Mr. Lecea's argument that DBF had not made payments toward funding the Virginia unemployment-compensation award. The CRB concluded, however, that it was irrelevant whether the Virginia unemployment-compensation had been funded by DBF, because reducing the workers' compensation award based on the Virginia unemployment-compensation benefits was "necessary to prevent overcompensating Mr. Lecea, not to make [DBF] whole."

## II.  Analysis

"Our limited role in reviewing the decision of the CRB permits us to reverse only if we conclude that the decision was arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *Hawk*, 244 A.3d at 1021 (internal quotation marks omitted).  "Although this court generally resolves legal questions de novo, the court ordinarily accords deference to an agency's interpretation of a statute that the agency administers, unless the interpretation is unreasonable or is inconsistent with the statutory language or purpose." *Id.* (internal quotation marks omitted).  We "have often given deference to the CRB's reasonable interpretation of the" D.C. Workers' Compensation Act (WCA), D.C. Code § 32-1501 et seq., but we have recently indicated that the extent to which we should defer to the CRB is unclear.  *Schwechter v. D.C. Dep't of Emp. Servs.*, 287 A.3d 267, 269-70 (D.C. 2023).  We need not address that issue in this case, however, because we agree with the CRB's resolution of the two questions at issue.

## A. Average Weekly Wage

Mr. Lecea renews the arguments he presented to the CRB. We agree, however, with the CRB's careful and thorough analysis of this issue. We therefore uphold the CRB's ruling.

We briefly add four comments. First, as previously noted, accepting Mr. Lecea's contention that § 32-1511(a)(6) applies in this case would have resulted in an average weekly wage of $720. That appears to be more than either Mr. Lecea or Mr. Anderson ever earned in any week while working at DBF. The CRB appropriately declined to adopt an average weekly wage that was so much in excess of what Mr. Lecea (or a similarly situated employee) would actually have been able to earn at DBF, given "the practical availability of work" to Mr. Lecea and similar workers. *Hawk*, 244 A.3d at 1022.

Second, we note one complication that the Board did not explicitly address in this case. We agree with the Board's conclusion that *Marcoux* does not require application of § 32-1511(a)(6) in this case. It is true, however, that the question whether § 32-1511(a)(6) is properly applied to calculate the average weekly wage of a claimant whose work is part-time or sporadic was arguably raised in *Marcoux*.

Specifically, one of the points the employer made was that Mr. Marcoux had not worked full eight-hour days for his employer. *Marcoux*, 2016 WL 4166022, at *8. The CRB's decision in *Marcoux* did not explicitly address that issue, instead addressing other specific topics and then concluding without further explanation that the ALJ's award was supported by substantial evidence and in accordance with the law. *Id.* at *9. Because the CRB in *Marcoux* did not squarely address the issue whether § 32-1511(a)(6) is properly applied to part-time or sporadic work, *Marcoux* should not be viewed as having resolved that issue. *Cf., e.g.*, *United States v. Debruhl*, 38 A.3d 293, 298 (D.C. 2012) (prior judicial decision is not binding precedent "unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question") (internal quotation marks omitted). The CRB thus was free to rely on *Wolfe*, 2006 WL 158649, at *7, which did squarely address and decide the question.

Third, Mr. Lecea argues that our decision in *Hawk* is inapplicable because the claimant in that case had abandoned any argument that § 32-1511(a)(6) should apply instead of § 32-1511(a)(4). It is true that this court in *Hawk* did not squarely decide whether § 32-1511(a)(4) or § 32-1511(a)(6) applies to a case like the present one. But we agree with the CRB that *Hawk*'s analysis provides helpful guidance on how to reach "an honest approximation" of a claimant's "probable future earning

capacity"—which is the goal of the workers' compensation system. *Hawk*, 244 A.3d at 1022.

Finally, Mr. Lecea points out that the WCA "is a humanitarian statute that should be given a liberal construction." *Hawk*, 244 A.3d at 1022. We conclude, however, that the CRB appropriately declined to extend that principle so as to permit Mr. Lecea to obtain compensation substantially in excess of the amount he would actually have earned from DBF had he not been injured.

For the foregoing reasons, we conclude that the CRB properly applied D.C. Code § 32-1511(a)(4) in calculating Mr. Lecea's average weekly wage.

**B. Reduction to Reflect Virginia Unemployment-Compensation Benefits**

Mr. Lecea renews the arguments he made before the CRB in support of his challenge to the reduction in his workers' compensation award to reflect his Virginia unemployment-compensation award. We agree with the CRB's thorough and persuasive analysis of this issue. We see no need to expand upon the CRB's reasoning, which we hereby adopt and affirm.

For the foregoing reasons, we affirm the decision of the CRB.

*So ordered.*